Plaintiff brought this suit for compensation, alleging loss of vision in his right eye as the result of an injury suffered while in the course of his employment. There was judgment rejecting plaintiff's demands, from which judgment he appeals.
The sole testimony with reference to the alleged accident was given by plaintiff, who testified that the injury occurred while he was working alone in the shop of his employer at night, and that there were no witnesses to the accident. According to plaintiff's testimony, on or about November 28, 1940, after filling a grease cup on an automatic screw machine, he started the machine and walked to the other side to make some minor adjustment. While he was thus engaged he relates that some grease was thrown from the revolving portion of the machine, which struck him in the right eye with considerable force. Plaintiff testified that the grease contained a number of minute particles of brass filings and that by virtue of the grease and filings lodged in his eye that organ suffered a severe injury which resulted in almost total loss of vision. According to plaintiff's story, he removed the grease and particles of brass from his eye with a pocket handkerchief, *Page 495 
reported the accident the following morning, and then proceeded to his eye specialist, Dr. W.L. Atkins, of Shreveport, for treatment. Plaintiff contends that the accident resulted in almost complete loss of vision in his right eye, and therefore claims compensation for one hundred weeks at the prescribed rate.
This case involves, almost exclusively, questions of fact; first, with regard to the alleged accident, and second, with regard to the cause of the loss of vision of which plaintiff complains.
The testimony of the plaintiff is vague, uncertain and thoroughly unsatisfactory on a number of points. He is uncertain as to the actual date of the accident, but is definite as to the fact that he visited the doctor the next day. Yet the doctor's records disclose the fact that he treated the plaintiff on December 4, 1940, which date was approximately one week after plaintiff claimed to have sustained the accident. Both plaintiff and his wife testified on trial of the case that plaintiff had never had any trouble of any character with his eye prior to the accident, and that his vision was perfect. Yet the testimony of Dr. Atkins reveals the fact that he had treated plaintiff for a severe infection of the eye at various times since the date of December 16, 1937.
According to plaintiff's own testimony the accident was not sufficiently serious to cause him to lose any time from his job. He continued to work after the date of the alleged injury, and did not quit his employment until the first of April, 1941, some four months after the purported injury. It further appears that there was some misunderstanding about his employment and disagreement as to his pay, though plaintiff insists that he quit because of trouble with his eye.
Dr. Atkins testified positively that the examination of December 4, 1940, which plaintiff claims was the day after the injury, disclosed no indication of any injury to the eye, nor any foreign matter of any kind present in the eye, and that it was his opinion at the time, which opinion he had never changed, that the inflammation and irritation and the loss of vision in the eye was due entirely to infection.
A review of Dr. Atkins' uncontradicted testimony shows that after his first examination of plaintiff's right eye in December, 1937, he was inclined to believe that the eye condition was caused by a syphilitic infection. This diagnosis was confirmed by a laboratory examination and Wasserman test. The patient was given specific treatment for his eye and also was treated for the disease. After a long series of treatments, the last of which was January 31, 1938, the doctor testified that his vision was seriously impaired and that he warned him that possibly he would lose his vision. There was another treatment for inflammation of the right eye on February 17, 1939, which was the last treatment administered by Dr. Atkins until the visit of December 4, 1940.
Two medical experts, specializing in diseases and treatment of the eye, testified for plaintiff, but the value of their testimony is materially weakened, if not entirely destroyed, by the fact that in relating the history of his eye trouble to them at the time they made examinations, on December 13, 1941, and January 9, 1942, plaintiff informed them that he had never before had any trouble with his eye and that his vision had always been perfect. It is also significant that these doctors testified that the condition which they observed and the loss of vision could have been the result either of traumatic injury or infection. Neither of these medical experts would definitely attribute the condition of the eye exclusively to the cause of injury or infection.
It appears to us that the testimony of plaintiff's own specialist, who appeared as a witness for the defendant, is not only persuasive, but convincing. He had the benefit of several years' observation of the condition, while the examination of plaintiff's medical witnesses was limited to one occasion each, the dates of which were some thirteen and fourteen months, respectively, after the alleged injury, and some four years after plaintiff's first serious eye trouble.
To hold that the loss of vision of plaintiff's right eye was attributable to the alleged accidental injury, even to the extent of accelerating the deterioration in vision to the point where all vision was practically lost, would be doing violence to a reasonable and logical interpretation of the facts adduced on the trial of this case, and would be drawing too strongly upon speculative and imaginary possibilities.
The mere possibility of a causal relation between injury to an organ and the loss of its use is not sufficient to justify *Page 496 
a definite conclusion as to such relationship.
In addition to his failure to establish compensable injury resulting from employment, it is our opinion that plaintiff has utterly failed to satisfactorily establish the accident. While it is true that in the absence of direct refutation, plaintiff's story of the accident would be entitled to serious consideration, we find that plaintiff's own testimony is open to serious questions and doubts which are increased and enhanced by the absolute lack of any corroboration by surrounding circumstances or physical facts.
For the reasons assigned, the judgment rejecting plaintiff's demands is affirmed, with costs.